[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties intermarried in White Plains, New York, on November 19, 1966. They raised three children none of whom are minors.
The court listened to the witnesses and reviewed all the exhibits in the case. In addition, the court has carefully considered the criteria set forth in Connecticut General Statutes sections 46b-56, 46b-62, 46b-81, 46b-82, 46b-84 and 46b-86 (b) in reaching the decisions reflected in the orders that follow.
The court has also weighed the holding of the Appellate Court in O'Neill v. O'Neill, 13 Conn. App. 300, 311, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988) wherein the court said as follows:
 A property division ought to accord value to those non-monetary contributions which CT Page 10764 enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities. See also Blake v. Blake, 207 Conn. 217, 230-31
(1988).
At the time of trial, the plaintiff husband was 48 years old and the defendant wife was 50 years old. The husband is currently being treated for depression. He attends Family Center where he is counseled by a therapist and through which he receives a prescription for Prozac. He started to take the Prozac one month prior to trial. He is an alcoholic who stopped drinking over twenty-years ago. He also indicated that he has problems with his back and knees. The defendant wife is in good health.
The plaintiff attended McGill University for two or three years and left before he completed degree requirements. He then went into the armed forces. Upon his return to civilian life he enrolled in Norwalk Community College, from which he received an Associate degree, and he also attended Pace. At or about the time of the marriage he had various part-time jobs and worked at Perkin-Elmer as a floor expediter. Subsequently, he became an Electrolux salesman for two years. He then became a political campaign assistant for six months and entered the moving business as a day laborer. In 1971 he began his own moving company. He also sought and gained local political office and has remained very active in community affairs for over twenty years. His investment of time in these local community affairs, however, occupied many days and nights. Although until the early 1980s he had a gross income of $50,000 to $60,000 from which he received a net income of $20,000 to $30,000, his political and community work and reliance on the income from his wife's mother's estate caused him to neglect his business. Since the early 1980s he has not earned nor contributed as much as that required to pay all basic family expenses. He CT Page 10765 acknowledges that he could save no money toward his children's college education. Currently he claims that his net income is $12,000 a year. The court found his testimony to be self-serving and unconvincing in terms of his ability to work or to find work.
The defendant wife attended Endicott Junior College for three years and received an Associate degree in Arts. She took two courses at the University of Connecticut but did not obtain a further degree. At the time of the marriage she worked as a teacher's aide at a private Montessori school and she continued there until she had a child in 1968. It was the parties' understanding that she would stay home and raise the children. She was the primary caretaker of the children. The plaintiff's involvement with their daily care and nurture was little. When the children were in their teens the defendant worked in telemarketing in various election campaigns for which she would sometimes be paid. She was most recently employed by a political candidate as a telemarketer from December, 1992 to September, 1993. She believes her gross earning capacity could be $500 a week. She also receives money from a trust in the gross amount of $188 per week.
The evidence presented at trial clearly establishes that the marriage has broken down irretrievably. No useful purpose would be served by a review of the evidence as presented. The parties' differences in personalities, values, sensitivities and goals caused problems from the early years of the marriage. The court declines to assess fault to either party for the breakdown of the marital relationship. The court finds there is the requisite jurisdiction. Judgment may enter dissolving the marriage on the ground of irretrievable breakdown.
The orders which follow take into account these findings by the court:
(1) The marital dwelling was purchased in 1970 with the financial assistance of the defendant's father. Mr. Deems made the down payment of $20,000 against the purchase price of $40,500. He mortgaged the balance and made an agreement with the parties that they would pay $235 per month to cover the cost of the mortgage, taxes and insurance. He would then turn the home over to them after a certain number of years. Mr. Von Keyserling did not make payments on a regular basis. He paid his father in-law a total of $4,220 between 1970 and 1976, having paid nothing in 1972 and 1973 despite his agreements to the contrary. In 1976 Mr. Deems began to convey a one-seventh interest in the house to his daughter CT Page 10766 annually. In 1982 he paid off the balance remaining on the mortgage and conveyed his remaining interest in the house to her. From that point on she paid the taxes and insurance on the real property.
(2) The wife inherited in excess of $200,000 from her mother's estate. Before she died Mrs. Deems had purchased clothes, cribs and most of the children's possessions and paid for their medical coverage. The defendant maintained a more affluent life style for the children than would have been available to them on their father's earnings through the money that she received from her mother's estate. The children had clothes, activities, special classes, and family vacations in Barbados and payment of their medical bills. In addition, the defendant purchased a car. Her inheritance is now exhausted.
(3) The defendant receives income from a trust established under her grandfather's will. The corpus is not available for distribution until the death of Mrs. Von Keyserling's two aunts, her grandfather's daughters. If the defendant predeceases her aunts her share of the principal will pass not to her estate but to her children.
The plaintiff introduced evidence as to a valuation of this trust, as he seeks alimony. The court permitted the evidence. However, the court finds that the defendant's interest does not constitute "property" subject to assignment to the plaintiff pursuant to Conn. Gen. Statutes 46b-81. The defendant's interest is a mere expectancy. See, Eslami v. Eslami, 218 Conn. 801, 806.
(4) The plaintiff is principally responsible for the parties' failure to file joint tax returns over the years. He failed to maintain business records and failed to file the necessary W-2 and 1099 forms for himself and any part-time employees. The parties made estimated payments to the Internal Revenue Service over the years. As of the trial's conclusion they were filing separate returns as married individuals. The defendant was aware that her husband had not filed returns but, because she had had no participation in the business, she declined to assist in gathering any of his records.
(5) The parties have lived on the funds obtained largely from the wife's inheritance and the husband did little to participate in the building of marital assets. In fact, the plaintiff neglected to build his business and failed to devote time to soliciting work; CT Page 10767 he gave more of his efforts and attention to community affairs, which, while laudable, did not meet the family's economic needs
The following orders shall enter:
A. Alimony
(1) Neither party is awarded alimony.
B. Property
(1) The defendant shall retain her interest in 11 Jackson Street, Cos Cob, Connecticut. The defendant shall give the plaintiff a mortgage in the amount of $45,000 which shall be subordinate to any first mortgage she places on the property. Said sum shall be paid to the plaintiff together with simple interest in the amount of 6% per annum as follows: $9,000 no later than the first anniversary date of this judgment; $9,000 no later than the second anniversary date; $9,000 no later than the third anniversary date; $9,000 no later than the fourth anniversary date, and $9,000 no later than the fifth anniversary date. She may pay the entire amount or portion thereof at an earlier date. In the event the defendant sells the property before the fifth anniversary date the balance remaining shall be deducted from the proceeds of the sale, after payment of any first mortgage, conveyance taxes, brokerage fees and other customary closing costs.
(2) The plaintiff is to vacate the premises by January 10, 1994. Until he vacates the property he shall pay to the defendant on a per diem basis one-half of the taxes, insurance, assessments and utilities. He is to remove his personal property, including his vehicles when he vacates.
C. Personal Property
(1) The defendant shall retain all the personal furnishings and furniture and personal property which she received from her family.
(2) The plaintiff shall retain any personal possessions, furnishings or furniture he received from his family.
(3) The plaintiff shall retain his business, tools, records and equipment. CT Page 10768
(4) All other items of furnishings and furniture in the marital residence shall be divided equally by the parties. In the event they are unable to agree they shall submit the issue to the Family Relations office for mediation.
(5) The defendant shall retain the ownership of the Volvo automobile.
(6) The plaintiff shall retain ownership of the vehicles listed on his financial affidavits, the 1981 Ford and the 1968 Ford and 1964 Chevy truck.
(7) The defendant shall retain her sole interest in the income of the T. Pierce Dunn Trust, and her contingent interest, if any, in the principal thereof and her interest in the partnership properties managed by Susan R. Clow, Agent.
D. Attorneys Fees.
Each party shall be responsible for the payment of his or her own attorney's fees.
E. Other liabilities
1. Each party shall be responsible for the liabilities listed on his or her own financial affidavit.
2. Each shall indemnify the other party against any claim arising from said liabilities.
3. The defendant shall be responsible for 25% of any amount due to the Internal Revenue Service for unpaid taxes, interest and penalties for those years in which the parties did not file tax returns, except under the following circumstances:
(a) The defendant has separately filed a tax return for that year; or
(b) The plaintiff files said return(s) after sixth months from the date of this judgment.
The defendant is not responsible for any interest or penalties which accrue after the date of this judgment.
The plaintiff shall indemnify the defendant against any CT Page 10769 liability in excess of the defendant's share of the obligation as herein before specified.
All other claims for relief not expressly addressed herein have been rejected.
LEHENY, J.